**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

_____
Brett E. Cohen, Esq.                                         )
As Personal and Legal                                     )
Representative of the Estate of                       )
D.Q., Deceased                                                 )
                                                                           )
                        Plaintiff,         ) Case No. 1:08-CV-00480-RMC
  v.                                                                  )
                                                                           )
                                                                           )
The Government of the                                    ) Jury Trial Demanded
District of Columbia,                                        )
                                                                           )
        *et al.*                                               )
                                                                           )
                     Defendants.     )
_____ )

**PLAINTIFF'S OPPOSITION TO
DEFENDANT WOODS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Brett E. Cohen, as personal and legal representative of the Estate of D.Q., deceased, by and through counsel, hereby submits his memorandum of points and authorities in opposition to Defendant William Woods' ("Woods") motion for summary judgment.

**I.  INTRODUCTION**

Plaintiff's decedent, D.Q., was a ward of the state under the custody and control of the District of Columbia and its contractors. This lawsuit arises from his death due to the negligence and/or reckless indifference of the defendants in this action. The Third Amended Complaint ("TAC") names four separate defendants, *viz.*, the District of Columbia ("the District") and its contractors

Progressive Life Center ("PLC") and Nile Express Transport ("Nile") (collectively the "organizational defendants"), as well as the individual defendant, Woods. Woods was driving the car that struck and killed D.Q.

At Count IV of the TAC, Plaintiff alleges in the alternative, or not inconsistent with the allegations against the organizational defendants, that Woods' negligence caused D.Q.'s death. (TAC ¶¶ 63-69.) According to Plaintiff, Woods' negligence included "failing to control his vehicle, failing to obey the posted speed limit, failing to keep a proper lookout, and failing to stop in time to avoid striking D.Q." *Id.* at ¶ 69. In his current motion, Woods seeks summary judgment in his favor as to the negligence claim against him at Count IV.

But the limited discovery taken in this matter demonstrates at the least that there is a factual issue as to Woods' negligence. The evidence obtained thus far could be found by a reasonable trier of fact to demonstrate that Woods was driving inattentively and breached his duty of care to pedestrians and children. For example, Woods' passenger was able to see D.Q. next to the road well before impact, but Woods did not see D.Q. despite the fact that it was a clear day and Montana Avenue is a long and straight road. Further, Woods admits that he did not see D.Q. until his passenger screamed, and Woods turned his head to see D.Q.'s face in the middle of his window. This leads to the inference that Woods was distracted and not taking due care to avoid pedestrians and children.

Another eyewitness, Taiya Gregory, testified that D.Q. took two to three steps in the road prior to impact, which occurred in the center of the car. It is

2

reasonable that a juror could find that had Woods not been distracted, looking away, he would have easily seen D.Q. on the right side of the road – just like his passenger did. Similarly, a reasonable juror could also find that, because D.Q. took two to three steps into the road prior to impact, he must have been in the street long enough for Woods to react. But instead the evidence shows Woods did not even brake.

At bottom, Woods' negligence is a factual issue and the negligence claim against him is inappropriate for summary adjudication. A jury should determine the relative negligence of the parties that ultimately caused D.Q.'s death. Woods' motion for summary judgment should be denied.

## II.   FACTUAL BACKGROUND

From approximately 1999 until his death, D.Q. was a ward of the state in the custody and care of the District and its contractors PLC and Nile. Ex. 1 (Gregory Dep. at 47-48.)[1] On July 18, 2006, D.Q. was at a summer camp, and needed to be driven to a therapy session at PLC's offices, which are located at 1933 Montana Avenue NE. Ex. 2 (Stultz Dep. at 8, 12-17.) PLC's offices are in an industrial section of town near several transportation facilities, including a D.C.

---

[1] Pursuant to the Protective Order entered by the Court by Minute Order on May 6, 2008, the exhibits in this motion will be mailed to counsel for the parties and a courtesy copy to the Chambers of Judge Collyer. Plaintiff previously consulted with counsel for Defendant Woods concerning the fact that Defendant Woods did not file any exhibits (but for a picture) with his motion; similarly, based on Woods' practice in not filing his exhibits with the Clerk, Plaintiff will file his exhibits under seal if required and/or requested.

Housing Authority truck facility, a tow truck facility, and a police car maintenance facility. Ex. 2 (Stultz Dep. at 128, 135); Ex. 3 (Woods Dep. at 42-45); Ex. 4 (Deposition Exhibits 7 through 9.) As he had done for some period of time, Nile's driver Rejino Stultz picked up D.Q. at camp, along with another boy in the foster program, and drove the boys to PLC's offices. Ex. 2 (Stultz Dep. at 12-17.) [2]

On the day of the incident, July 18, 2008, as Woods began driving down Montana Avenue NE, he had a clear view of the van in which D.Q. was being transported. Ex. 3 Woods Dep. at 46-48.) (describing the Nile van as an "SUV".) Woods had driven down Montana Avenue NE many times in the past, lived around the corner, and was aware of the various dangers and distractions as well as the PLC facility itself. Ex. 3 (Woods Dep. at 42) (describing how he saw the PLC building "quite often".) Woods' wife, Jeanne, was riding that day in the front passenger seat of Woods' car and had as clear view of the road as Woods. Ex. 3 (Woods Dep. at 24, 30.) D.Q. was clearly visible on the right side of the road for some period of time prior to the impact and Woods' wife Jeanne watched D.Q. run between Nile's van and a truck in front of the van:

> she [Jeanne] saw this person running beside the vehicles and then the next thing she know, he was running toward the car and she thought he was going to run into her door and that's when she screamed.

---

[2] While not at issue in the current motion, Plaintiff has asserted several counts against the organizational defendants, which are distinct from the claim against Woods, and they are primarily based in various forms of negligence and/or reckless indifference (Section 1983), based on the organizational defendants' various failures to, among other things, properly hire, supervise, and train contractors, employees and agents; assure adequate and safe parking, provide an escort for D.Q., and the like.

Ex. 3 (Woods Dep. at 64-66.)

> From Woods' perspective, when he heard Jeanne scream, he
>
> *looked to the right*. I saw a body leaping from my car. I turned the car to avoid that intrusion. The body landed on the hood of my car. As my car came around to the left, the body slid off my car and fell in front of my car.

Ex. 3 (Woods Dep. at 49-50) (emphasis added.) Thus, it is clear that Woods did not look to see D.Q. until his wife screamed, drawing his attention back to the front of the car from whatever he had arguably been looking at to his left; and at which time it was too late for D.Q., who, according to witness Taiya Gregory, was struck by the middle of the front of the car.

According to Gregory, she was in the PLC offices talking to her husband on the phone when the Nile van pulled up and parked across the four lane road in order to drop off D.Q. Ex. 1 (Gregory Dep. at 67.) As the van driver began to exit the van, the left passenger sliding door opened, and D.Q. exited the van. *Id.* at 68. According to Ms. Gregory, D.Q. then took "about three steps" into the road, *id.* at 128-29, before being hit by the "front mid portion" of Woods' car. *Id.* at 131.

According to the Nile van driver, Rejino Stultz, D.Q. exited the van on the right (sidewalk) side of the van. He did not see what D.Q. did after he exited the van. Ex. 2 (Stultz Dep. at 126.) Perhaps the most significant portion of Stultz's testimony as it relates to Woods and the incident demonstrates that the portion of Montana Avenue near PLC was well-known for its dangers. Ex. 2 (Stultz Dep. at 126-129.) And, Woods was familiar with those dangers. Ex. 3 (Woods Dep. at

5

35) ("Well, that's a police quarter. Police station at one end, police garage at the other end. So in that area we tend to drive very slow."). Thus, Stultz's testimony further demonstrates that Woods had notice that he should have taken special care and precaution as he drove down Montana Avenue.

### III. ARGUMENT

#### A. Summary Judgment Standard.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

In considering whether there is a triable issue of fact, the Court must draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The non-moving party must do more

than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir.1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)).

The mere existence of a factual dispute by itself, however, is not enough to bar summary judgment. The party opposing the motion must show that there is a genuine issue of *material* fact. *See Anderson*, 477 U.S. at 247-48. To be material, the fact must be capable of affecting the outcome of the litigation; to be genuine, the issue must be supported by admissible evidence sufficient for a reasonable trier of fact to find in favor of the nonmoving party. *See id.*; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

In the District of Columbia, issues of negligence frequently "are not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner." *Croce v. Hall*, 657 A.2d 307, 310 (D.C. 1995) (internal quotation marks and citation omitted). By way of amplification, the underlying rationale for this concept has been stated succinctly by the Wisconsin Court of Appeal, which of course is not binding law here, but provides an apt explanation of why negligence cases are not susceptible of summary adjudication:

7

> Summary judgment does not lend itself well to negligence questions. *Ceplina v. South Milwaukee School Board*, 243 N.W.2d 183, 185 (1976). Whether a person exercised ordinary care usually is not determinable by summary judgment. *Ruppa v. American States Ins. Co.*, 646, 284 N.W.2d 318, 325 (1979). Negligence involves the reasonableness of a person's action or inaction. Reasonableness turns on the totality of the facts and circumstances. Summary judgment seldom can adequately portray that totality and therefore is usually inappropriate to resolve negligence issues. *Hunter of Wisconsin, Inc. v. Hamilton*, 304 N.W.2d 752, 757 (1981).

*State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 517 (Wis. Ct. App. 1986) (parallel citations to state reporter and one citation removed).

When viewed through the controlling legal elements of a claim for negligence under D.C. law, it is clear that summary judgment is not appropriate under the facts presented here.

    **B.**    **Issues of Fact Preclude Entry of Summary Judgment for Woods.**

Plaintiff's claim against Woods at Count IV sounds in negligence. In the District of Columbia, "in order to prevail on a claim of negligence, the plaintiff must establish a duty of care, a deviation from that duty, and a causal relationship between that deviation and an injury sustained by the plaintiff." *Childs v. Purll*, 882 A.2d 227, 234 (D.C. 2005) (reversing in part trial court's entry of summary judgment in favor of defendant), quoting *Youssef v. 3636 Corp.,* 777 A.2d 787, 792 (D.C. 2001). *See also Jones v. Hartford Life & Accident Ins. Co.*, 443 F. Supp. 2d 3, 5 (D.D.C. 2006) (stating that "the elements of a cause of action for negligence are: a duty of care owed by the defendant to the plaintiff, a breach of

that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach") (citations omitted).

As described below, all but one of the elements of negligence is undisputed, and in D.Q.'s favor. The only disputed element is whether Woods deviated from his duty of care. And that element should be tried to a jury, who should view all of the facts and circumstances.

### 1. It Is Undisputed that Woods Owed D.Q. a Duty of Care in Operating His Vehicle.

It is undisputed that Woods owed D.Q. a duty of care because a driver on a road in the District of Columbia owes pedestrians and children a duty of care to operate his car with due care. While it seems obvious, this duty is codified in the District of Columbia Municipal Regulations as follows:

> Notwithstanding the provisions of this chapter and of chapters 12 and 21, *every operator of a vehicle shall exercise due care to avoid colliding with any pedestrians* or any person propelling a human powered vehicle and shall give an audible signal when necessary, and shall *exercise proper precaution upon observing any child* or any obviously confused, incapacitated, or intoxicated person.

D.C.M.R. 18-2300.2 (emphasis added).

There is no real dispute that Woods owed D.Q. – who was both a pedestrian and a child – the duty to exercise due care and proper precaution when operating a motor vehicle.

9

### 2. It Is Undisputed that Woods Caused Damage to D.Q.

Woods does not dispute that his car struck D.Q. or that D.Q. subsequently died of injuries sustained as a result of his being struck by Woods' car.

### 3. Whether Woods Deviated From His Duty of Care Is In Dispute.

It is a question for a jury whether Woods breached his duty to exercise precaution to avoid collisions with pedestrians and to exercise proper precaution upon observing children. When viewed in the totality of circumstances, and as described in the factual section above, a jury will learn that Woods was traveling down a street that he had previously understood had significant distractions with two transportation facilities on the right side as well as a police vehicle maintenance lot on the left side. Ex. 2 (Stultz Dep. at 126-29); Ex. 3 (Woods Dep. at 35.) A jury will also learn that Woods was able to see the Nile van (the "SUV") on the right side of the road. Ex. 3 (Woods Dep. at 46-48.)

Further, his wife, Jeanne, was able to see D.Q. running up and down the street on the right side of the Nile van and Jeanne's scream caused Woods to pay attention to the front of the car and drew his attention from whatever he was looking at to his left. Ex. 3 (Woods Dep. at 49-50.) And, Taiya Gregory saw D.Q. collide with the center of the front of Woods' car. Ex. 1 (Gregory Dep. at 128-29, 131.)

Considering that Woods' own testimony reveals that he was looking to the left and only looked to the right after his wife screamed, it is entirely reasonable for a jury to believe that Woods was distracted and not *exercising due care to*

10

*avoid colliding with any pedestrians and/or exercising proper precaution upon observing any child immediately prior to his vehicle's impact with D.Q.* A jury could reasonably find that had Woods been exercising due precaution (including giving an audible warning, such as honking his vehicle's horn) he would have stopped prior to striking D.Q. and/or prevented D.Q. from colliding with his vehicle.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Woods' Motion for Summary Judgment.

August 6, 2008                                         Respectfully submitted,

/s/ James C. Bailey
_____
James C. Bailey
Jason H. Ehrenberg
BAILEY & EHRENBERG PLLC
1155 Connecticut Avenue NW
Suite 1100
Washington, D.C.  20036
T:  (202) 787-3869
F:  (202) 318-7071
E:  jcb@becounsel.com

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this 6th day of August 2008, he served the accompanying documents via electronic filing, on the following counsel who have consented to electronic service:

Barry Bach
Ruth Vadi
HODES, PESSIN & KATZ, P.A.
901 Dulaney Valley Road
Suite 400
Towson, MD 21204

Jeffrey R. DeCaro
DECARO, DORAN, SICILIANO,
  GALLAGHER & DEBLASIS
4601 Forbes Boulevard
Suite 200
Lanham, MD 20706

Christopher Costabile
10555 Main Street
Suite 400
Fairfax, VA 22030

David Grimaldi
MARTELL, DONNELLY,
  GRIMALDI & GALLAGHER
1900 L Street NW
Suite 401
Washington, D.C. 20036

                                                                  /s/ James C. Bailey
                                                                  _____
                                                                  James C. Bailey

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

_____
Brett E. Cohen, Esq.                )
As Personal and Legal               )
Representative of the Estate of     )
D.Q., Deceased                      )
                                    )
                 Plaintiff,         ) Case No. 1:08-CV-00480-RMC
     v.                             )
                                    )
                                    )
The Government of the               ) Jury Trial Demanded
District of Columbia,               )
                                    )
         *et al.*                   )
                                    )
                 Defendants.        )
_____ )

**PLAINTIFF'S CONCISE STATEMENT OF
GENUINE ISSUES NECESSARY TO BE LITIGATED**

Pursuant to Local Civil Rule 56.1, Plaintiff hereby submits the following concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated.

As a threshold matter, it must be determined whether Defendant Woods, under the totality of the circumstances, deviated from the applicable standard of care, which requires that he, as the operator of a vehicle, exercise due precaution towards pedestrians and children. Facts that must be considered by a jury under the totality of the circumstances include:

1.  Woods was traveling down a street that he had previously understood had significant distractions with two transportation facilities on the

right side as well as a police vehicle maintenance lot on the left side. Ex. 3 (Woods Dep. at 42.)

2. Woods was able to see the Nile van (the "SUV") as he drove down Montana Avenue. Ex. 3 (Woods Dep. at 46-48.)

3. Woods' passenger, his wife, Jeanne, was able to see D.Q. running up and down the street on the right side of the Nile van. Ex. 3 (Woods Dep. at 24, 30, 64-66.)

4. Taiya Gregory saw D.Q. collide with the *center* of the front of Woods' car. Ex. 1 (Gregory Dep. at 67-68, 128-29, 131.)

5. Woods' own testimony reveals that he was looking to the left and only looked to the right after his wife screamed; thus, it is entirely reasonable for a jury to believe that Woods was distracted and not *exercising due care to avoid colliding with any pedestrians and/or exercising proper precaution upon observing any child immediately prior to his vehicle's impact with D.Q.* Ex. 3 (Woods Dep. at 49-50.)

6. A jury could reasonably find that had Woods been exercising due precaution (including giving an audible warning, such as honking his vehicle's horn) he would have stopped prior to striking D.Q. and/or prevented D.Q. from colliding with his vehicle.

Dated: August 6, 2008            Respectfully submitted,

/s/ James C. Bailey

_____
James C. Bailey
Jason H. Ehrenberg
BAILEY & EHRENBERG PLLC
1155 Connecticut Avenue NW
Suite 1100
Washington, D.C.  20036
T:  (202) 787-3869
F:  (202) 318-7071
E:  jcb@becounsel.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

_____
Brett E. Cohen, Esq.                             )
As Personal and Legal                          )
Representative of the Estate of              )
D.Q., Deceased                                    )
                                                           )
                Plaintiff,        ) Case No. 1:08-CV-00480-RMC
  v.                                                     )
                                                           )
                                                           )
The Government of the                        ) Jury Trial Demanded
District of Columbia,                           )
                                                           )
      *et al.*                                          )
                                                           )
                Defendants.   )
_____ )

### ORDER

Upon consideration of Defendant William Woods Motion for Summary Judgment and its exhibits, Plaintiff's opposition thereto, and all other filings, it is hereby ORDERED that the motion is DENIED.


Dated:                                    _____
                                                  Rosemary M. Collyer,      J.

E-Copy to:

**Counsel for Plaintiff:**

James C. Bailey
Kathleen A. Behan
BAILEY & EHRENBERG PLLC
1155 Connecticut Avenue NW
Suite 1100
Washington, D.C. 20036

**Counsel for Defendant District of Columbia:**
Barry Bach
Ruth Vadi
HODES, PESSIN & KATZ, P.A.
901 Dulaney Valley Road
Suite 400
Towson, MD 21204

**Counsel for Defendant Progressive Life Center:**

Jeffrey R. DeCaro
DECARO, DORAN, SICILIANO,
   GALLAGHER & DEBLASIS
4601 Forbes Boulevard
Suite 200
Lanham, MD 20706

**Counsel for Defendant Nile Express Transport, Inc.**

Christopher Costabile
10555 Main Street
Suite 400
Fairfax, VA 22030

**Counsel for Defendant William Woods**

David Grimaldi
MARTELL, DONNELLY,
   GRIMALDI & GALLAGHER
1900 L Street NW
Suite 401
Washington, D.C. 20036